Good morning, Your Honors. Counsel, may it please the Court, my name is Brian Graff with Ryan Swanson Cleveland on behalf of the trustee Michael Hitt in his capacity as trustee of the Bankruptcy Estate of All American Bottled Water Corporation. I would like to reserve one minute for rebuttal and I do understand that I need to monitor my own time. The trustee, Your Honors, the appeals dismissal of fraudulent conveyance claims brought under 11 U.S.C. Section 544 as well as state statute R.C.W. 19.40.041 and R.C.W. 19.40.051. Three transfers in particular are being challenged by the trustee as constructively, excuse me, as constructively of points paid by the debtor's estate or the debtor at the time, All American Bottled Water Company, to appellees Bar K. Ng and Mr. Barney Ng. The three transfers are points payment of 2.65 million paid by All American Bottled Water Company to Bar K. in March of 2004, a payment of 1.85 million represented by a promissory note made by All American Bottled Water Company to Mr. Ng also in March 2004, and finally a 1.5 million dollar payment in points to Bar K. in July of 2004. Bar K. is owned by Mr. Ng and his brother. It is a mortgage banking firm. The trustee submits respectfully that All American Bottled Water Company did not receive reasonably equivalent value in exchange for the transfers of any of those points payments. This is a single deal, right? This is a single deal. They borrowed money and the lender included, by definition of the contract, included all these people and part of the deal in the loan was X will give you so many dollars and you've got to pay points and we want them to go to Y. And it seems to me what the trustee wants to do is disaggregate that. People talk about step transactions, I don't really get that. What you're doing, you just want to disaggregate it, right? You want to say, well the points that were paid to the lender to get the loan should be taken away from the loan itself and treated as a whole separate thing with no consideration, right? That's your argument? No, Your Honor, respectfully. As I understand it. That is the deal, isn't it? The lender includes all these people, correct? The lender does not include Bar K. The lender does, by definition in the contract, does it not? No, I believe Mr. Ng was included in the original loan transaction. Bar K., I don't believe was not. Let me confirm. They're not asking me of Barney, I think it was. The lender's Ari, Pensko, and Barney. That's the lender. That is who was defined as lender in the loan agreement. Bar K., not included amongst those. And I'm not trying to split hairs here. Well, I think you are splitting hairs because you're trying to do, you're not splitting hairs, you're trying to split the deal into parts. So if I go to lender X and lender X will loan me the money if I will pay points to Y, you're saying, oh, we've got to disaggregate that. Y didn't loan any money, so we've got to disaggregate it. I don't really understand the argument. I mean, I don't understand the argument for disaggregation and then getting us into this complicated step transaction stuff, which seems almost irrelevant. You're just disaggregating the deal, aren't you? We don't believe so, Your Honor. We believe that issue in a fraudulent conveyance action is the transfer challenge by the trustee. That the structure of the transfer, the structure of the transactions here, there was an original loan transaction in March of 2004. There was then an agreement to loan an additional $10 million in July. And those loan documents and those loan transactions included multiple transfers. The term transfer is defined by statute in Washington. It includes every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with an asset. Counselor, was there anything that your client didn't know about this deal? Your client, All American, knew that it was going to have to pay money to Bar K, right? And it knew that it was going to have to pay money to Ing. Yes, the debtor, All American Bottled Water Company, knew that those payments were going to be made. Okay, so what's fraudulent about that? I mean, if they knew, and this is a sophisticated corporation, we have millions of dollars at stake here. It knows that in order to get the loan, it's going to have to pay high points to Bar K and Ing. So what's fraudulent about that? We're not saying, Your Honor, it is an intentional fraudulent act. We're saying it is constructively fraudulent insofar as reasonably equivalent value was neither provided by Bar K or Ing in exchange for the payment of points to those entities. Okay, did All American think that this was not a good deal at the time? I assume that All American is a sophisticated corporation, right? These people are not stupid. Correct. I assume that you don't want to concede that your clients are stupid. No, you're correct. These are not stupid people. No, they're not. They're financially sophisticated folks. They've got an opportunity to buy this plant, think they're going to get a good deal, and think they're going to be able to make a go of this. Now, if they made a go of this, we wouldn't be here, would we? No. In fact, it would have been a great deal, and these people would have been a lot of just great businessmen, right? I think that's probably right. Okay, the deal goes sour, and now they want to come back and undo the loan because they think they paid too much on the points. Shouldn't we look at the value of what they acquired? Apparently, that was very valuable property. Your Honor, yes, I think it's important to evaluate what the parties involved gave up and what they acquired. We're not trying to disamalgamate the deal. By the terms of the agreement themselves, neither Ng nor Barkay were lenders. They didn't fund the dollars. Now, they did have an agreement with the lenders pursuant to which they were paid a servicing fee and paid for their efforts on behalf of the lenders. Those services were provided to the lenders, not to All-American Bottled Water Company. Wait a minute. If you want to borrow $100 from me, and I said, fine, I'll loan you $100, but guess what? I want $10 to go to X. I'm going to give X the $10, and I'll give you $90. On your view, you can then set aside the deal of giving the money to X because you said, oh, there's no consideration for that. But you weren't going to get $100 unless you did that. That's constructive fraud because X didn't do anything to get it. Only you, lender, did something, and you said, you'll give me $90 if X gets $10, and you pay back $100. What? That doesn't even make economic sense when put that way to me, anyway. Your Honor, in each constructive fraudulent transfer claim, it seems to me that the parties ultimately agreed to that deal. It never would have occurred otherwise. What fraudulent conveyance laws seek to do is protect the unsecured creditors, the parties that aren't a part of that loan transaction or those negotiations. If the transfer is made for less than reasonably equivalent value, even if the debtor agrees to it, it doesn't mean it's not constructively fraudulent. So if I say, I'll give you $90, and I'll put $100 on the loan, then no value for the $10, right? Correct. I say that. I don't give it to anybody else. I just keep it. So you say, well, we've got a $10 that you kept. Huh? Well, if the party receiving the $10 provided no value to the estate, correct. If the value is... Well, of course, any time a lender takes points, it doesn't provide value to the estate. The distinction here, Your Honor... By the way, you're actually down to 35 seconds if you wanted to say something. Understood. The distinction here, Your Honor, I believe is that the parties receiving these points payments were not the lenders. Yeah. Thank you. Good morning. May it please the Court. Dan Firm for Appellees. The trustee ultimately is asking the Court, sitting as a Court of Appeals with findings of fact made by the bankruptcy court available to it, to pretend that RE loans would have given American Bottled Water Company apparently $22 million or at least $16 on a non-recourse basis with no money down and allowed it to buy a $14 million brewery completely with other people's money if only American Bottled Water Company had balked at the provision for payment of points to the person who had arranged this loan on a two-week basis and enabled American Water Company to exercise an option. The trustee's theory, it both defies common sense and the precedents that are relevant in this circuit. In the case of In re United Energy, a 1991 decision in this circuit, the Court said that reasonably equivalent value analysis is directed, I'm quoting, at what the debtor surrendered and what the debtor received, irrespective of what any third party may have gained or lost. So the effort by the trustee to draw a distinction between who was the lender and whether Baracay was a lender is meaningless. You look at what as the bankruptcy court ultimately did, what did the debtor get? In this case, ultimately $25 million. And what did it give up that the trustee is complaining about? $6 million. Gave up $6 million, got $25 million. Under pretty simple logic, reasonably equivalent value is exchanged. You don't really need to get as, I don't know, as complicated as the trustee has tried to make this. I like the word disaggregate. I think we use disamalgamate. What the trustee is trying to do is take this loan apart and renegotiate it and confer a windfall on creditors who came to this party after the loan was, the loan proceeds were dispersed. Again, it makes no sense. The trustee has relied on a case called, it was the Arizona District Court decision. I'm not sure, it's GTI Capital Holdings, I'm not sure exactly what to do with that because it was withdrawn in publication subsequently. But in as much as the trustee has to rely on that and there's a reply brief, I direct the its decision in 373 of the Bankruptcy Report. Counsel, is there any point at which Washington law would intervene into a transaction? So for example, if All-American had said, well if the lender had said to All-American, you're going to owe us for $25 million, we're only going to give you $1 million in cash, but you're going to pay us $25 million one year from today. Would Washington law have anything to say about that kind of a transaction? Not based on the case law, I don't think. You don't have usury laws or something of that equivalent that would kick in at some point? No, usury laws would not kick in because RCW 1952, I think it's 080, yes it is, provides that corporations, and the ABWC was a corporation, may not maintain an action on usury if the transaction is primarily for commercial or business purposes. And this clearly was, and the trustee hasn't and can't argue otherwise. So what the trustee is arguing, when you come right down to it, usury is sometimes referred to as the cost of renting somebody else's money. And AABWC here rented RE loans' money, and part of the cost of paying $6 million in what have been referred to as points, were called points in the first loan commission in the second, but have generally been referred to as points. And to complain about that is to make what we consider a usury claim under the rubric of, or attempt to make a usury claim under the law of fraudulent transfers. It doesn't work. The other problem the trustee has is that we have a finding of fact that the loan would not have been made but for the agreement by American Bottled Water Company to pay points. The trustee has a satisfactory argument for what authority allows you to, and he hasn't argued that that finding is unsupported by the evidence or is by Mr. Ang. He arranges this loan non-recourse. Nobody else was willing to make it in that time on those terms, the terms on which American Bottled Water Company insisted. But he didn't provide value. If you look only at that and ignore the fact that American Bottled Water got $16 million net in the first loan and another $8 million net in the second, for a total of almost $25 million, again defies common sense. And I lost my train of thought. I'm sorry. I do want to address one point I don't think was covered adequately in the briefing. I don't, I'm not sensing here that I'm in, our case is in trouble, but should this court agree with the trustee that the district court committed some sort of legal error in looking at what the debtor received, including the $25 million and what it gave up, and should have focused narrowly on whether it got value for the $6 million. If the court would do that, the remedy would not be to enter judgment as a matter of law. The trustee would rather remand for findings of fact on issues the district court didn't reach because its approach did not require it to do that. So we would ask that this court affirm the district court based on the findings of fact and what we think are the clearly applicable principles of the law. Thank you. Counsel, I think you have about half a minute. Your Honors, we submit that equity should not step in to collapse the structure chosen by the parties to the harm of unsecured creditors who fraudulent conveyance laws are meant to protect. The transfers here of unsecured payments constitute independent transfers pursuant to the statutory definition of the term. The step transaction doctrine is an equitable doctrine and should not be applied in these circumstances. Thank you, Counsel. All right, we thank both Counsel for the argument. All American Bottled Water Corporation is submitted.
judges: Fletcher B. , Fernandez, Bybee